IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 5:03 pm, Apr 30, 2019*

RANDY CARABALLOS RAMIREZ,

    Petitioner,

v.

WARDEN TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:18-cv-57

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Randy Ramirez ("Ramirez"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Ramirez filed a Response. Docs. 7, 10. Ramirez also filed a Motion for Default Judgment. Doc. 9. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Ramirez's Petition based on his failure to exhaust his administrative remedies. In the alternative, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Ramirez's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Ramirez leave to appeal *in forma pauperis*. I **DENY** Ramirez's Motion for Default Judgment.

### BACKGROUND

Ramirez was convicted in the Southern District of Florida on March 15, 2017 of conspiracy to possess with intent to distribute five kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b), and

was sentenced to 48 months' imprisonment.  Doc. 7-1 at 6.  He has a projected release date of May 24, 2020 via good conduct time release.  Id. at 7.

As a result of disciplinary hearing proceedings based on a Code 108 charge for possession a cellular telephone, Ramirez was sanctioned with the loss of 41 days' good conduct time, 54 days non-vested good conduct time, and visitation, commissary, and telephone privileges for 6 months.  Doc. 1 at 2; Doc. 7-2 at 7–9.

## DISCUSSION

In his Petition, Ramirez asserts the imposed sanctions were too severe, as other inmates received 27 days of good conduct time loss, this was his first disciplinary sanction, and he accepted responsibility and cooperated with prison staff immediately.  Doc. 1 at 6.  Ramirez states his right to due process was violated when the disciplinary hearing officer ("DHO") lied about Ramirez being in possession of a cellular telephone because the telephone was in a Thermos but punished Ramirez for being in possession of a cellular telephone.  Id. at 7.  As relief, Ramirez requests either a lesser sanction equivalent to other inmates' sanctions or a declaration that his sanctions are null and void.  Id. at 8.

Respondent avers Ramirez failed to exhaust his administrative remedies because he did not complete both necessary steps in the appeals process.  Doc. 7 at 6.  Respondent alleges Ramirez fails to set forth an equal protection or a due process claim, and those claims should be dismissed.  Id. at 6–9.

The Court addresses Ramirez's Motion for Default and Respondent's arguments for dismissal in turn.

**I.      Respondent is not in Default**

Ramirez seeks a default judgment against Respondent under Federal Rule of Civil Procedure 55.  Doc. 9 at 1.  Ramirez states Respondent did not comply with this Court's July 31, 2018 Order, because Respondent did not file any responsive pleading to Ramirez's Petition within 21 days of that Order.  Id. at 2.

This Court's July 31, 2018 Order directed Respondent to file a response or motion to dismiss Ramirez's Petition within 21 days "of service of the Petition."  Doc. 3 at 1.  A copy of Ramirez's Petition was served upon Respondent on August 20, 2018.  Doc. 5.  Accordingly, Respondent had 21 days from August 20, 2018, or until September 10, 2018, to file his desired response to Ramirez's Petition.  Respondent filed his Motion to Dismiss on September 10, 2018, rendering his response timely.  In addition, the entry of default judgment is not contemplated in habeas corpus proceedings, even if Respondent's Motion to Dismiss were untimely, which it is not.  Latif v. Gartland, Civil Action No. 5:17-cv-69, 2017 WL 4227403, at *1 n.2 (S.D. Ga. Aug. 28, 2017), *adopted by* 2017 WL 4209730 (Sept. 19, 2017); see also Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987) (finding that a default judgment is not contemplated in habeas corpus cases); Goodman v. Keohane, 663 F.2d 1044, 1048 n.4 (11th Cir. 1981) (rejecting petitioner's argument that the government's tardiness in responding to petition entitled him to habeas relief).  The Court, therefore, **DENIES** Ramirez's Motion for Default Judgment.  Doc. 9.

**II.      Whether Ramirez Exhausted his Administrative Remedies**

**A.      Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x

3

840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus,

4

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.   **Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies

---

exhaustion requirements are applicable to habeas petitions. Santiago-Lugo, 785 F.3d at 475 (noting exhaustion is required for § 2241 petitions but is not a jurisdictional requirement).

5

is a defense before the court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[2]  First, the court is to take the petitioner's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the petitioner's version of the facts, the petitioner has not exhausted, the cause of action must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether petitioner has exhausted, the court need not accept all of petitioner's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

**C.     The Bureau of Prisons' Exhaustion Requirements**

The Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et seq*.  The Administrative Remedy Program applies to all

---

[2]     Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding.  See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

inmates incarcerated in penal institutions operated by the BOP. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within 20 calendar days of the incident giving rise to the grievance. § 542.14(a). In those situations in which an inmate is appealing a disciplinary hearing proceeding, however, the inmate is to submit an appeal directly with the Regional Director for the region in which the inmate is located at the time of filing. § 542.15(d)(2). Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form. Doc. 7-1 at 2. The Regional Director has 30 calendar days to respond to a BP-10. § 542.18.

If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. Id.; § 542.15. Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. § 542.15(a). Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. Doc. 7-1 at 3. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." § 542.18.

### D.     Analysis of Ramirez's Efforts at Exhaustion

In his Petition, Ramirez contends he filed a BP-10 on December 26, 2017 to challenge the severity of his sanction, the disparity of sentence, and a violation of his right to due process of law. Doc. 1 at 2. Ramirez states the BOP "[n]ever answered." Id. Ramirez states he filed an

appeal with the Office of General Counsel (BP-11) in April 2018 to make the same challenges, and the BOP did not answer that request. Id. at 3.

Respondent notes Ramirez did file a BP-10 to challenge the disciplinary action, but he did not submit an appeal at the BP-11 level. Doc. 7 at 6. In response, Ramirez asserts he filed his Regional appeal on December 23, 2017 but did not receive a response until September 10, 2018, which was after he filed his Petition. Doc. 10 at 2. Nevertheless, Ramirez contends he filed his BP-11 in April 2018 and is still awaiting a response. Id. Ramirez avers he filed his § 2241 Petition "because there [is] no reason to justify a huge delay by the BOP staff." Id. at 2–3.

Under Turner's first step, Ramirez exhausted his administrative remedies as to his disciplinary proceedings challenge. He contends he filed a BP-10 no later than December 27, 2017. The DHO issued his decision on December 12, 2017, and Ramirez received a copy of the DHO report on December 22, 2017. Doc. 7-2 at 9. Ramirez had 30 calendar days to file an appeal through the administrative remedies' procedure, or until January 22, 2018. Id. Ramirez met this deadline, whether he filed his BP-10 on December 26, 2017, as he states in his Petition, or on December 23, 2017, as he states in his Response to the Motion to Dismiss, or on January 2, 2018, as Respondent states in his Motion to Dismiss and for which Petitioner has produced a mail receipt as being delivered on that date. Doc. 1-1 at 4, 13; Doc. 7-1 at 10; Doc. 10 at 2. Ramirez contends he filed a BP-11 in April 2018 and still had not received a response to his appeal at the time he filed his Response to the Motion to Dismiss. Doc. 10 at 2.

Under Turner's second step, however, the matter of exhaustion becomes murky. In support of his position that Ramirez did not exhaust his administrative remedies prior to the filing of his Petition, Respondent submitted the declaration of Glenda Dykes, who has worked as

8

an administrative remedy clerk with the BOP since 2006.  Doc. 7-1.  Ms. Dykes declares Ramirez had not submitted any administrative remedies at the BP-11 level as of August 23, 2018, the date of her declaration.  Id. at 3.  Respondent also attached a copy of Ramirez's administrative remedy printout, which reveals Ramirez filed Remedy Number 947720-R1 (BP-10) on January 2, 2018 to challenge excessive sanctions for a Code 108 violation.  Id. at 10.  This Remedy has a status date of July 24, 2018 without indication of the disposition.  Id.  While Ramirez asserts he filed his BP-11 in April 2018, doc. 1 at 3; doc. 10 at 2, he offers no evidence to support his assertions.

Thus, the Court finds more credible Respondent's supported contention that Ramirez did not file a BP-11 with the Office of General Counsel, or the final administrative step, than Ramirez's unsupported claims that he did file a BP-11.  Compare Doc. 7-1 at 10 with Doc. 1 at 3; Doc. 10 at 2.  The Court notes Ramirez submitted documentation that he filed a timely BP-10, the response from the Regional Office (with instructions to file an appeal with the Office of General Counsel) was signed on August 30, 2018, and Ramirez received this response on September 10, 2018.[3]  Doc. 1-1 at 4; Doc. 10 at 2, 6–7.  Respondent does not argue Ramirez's BP-10 was untimely filed; in fact, Respondent recognizes Ramirez's filing at this level.[4]  Doc. 7 at 6.  However, in the absence of evidence Ramirez did file a BP-11 prior to the filing of his Petition, Ramirez did not exhaust his available administrative remedies prior to the filing of his

---

[3]  There is nothing before the Court revealing that these documents are actually related to Ramirez's BP-10, but the Court considers them to be for purposes of its analysis of Ramirez's exhaustion.

[4]  Ramirez was well within his rights to deem his unresponded to BP-10 as having been rejected. § 542.18.  However, what neither party explains is why Ramirez waited until April 2018 to file his alleged appeal since the Regional Office's 30 calendar days to respond had long since expired by that time, why the Regional Office's response was not given until August 30, 2018, and whether, if Ramirez had filed a BP-11 in April 2018, as he alleges, that filing would have been deemed untimely and rejected for that reason.

Petition on July 16, 2018.  Doc. 1.  Consequently, I **RECOMMEND** the Court **GRANT** this portion of Respondent's Motion to Dismiss and **DISMISS without prejudice** Ramirez's Petition.  In the alternative, should the Court decide to reach the merits of Ramirez's Petition, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Ramirez's Petition.

### III.     Whether the Imposed Sanctions Violate due Process

Ramirez contends his right to due process was violated because the DHO used a false statement (that Ramirez admitted to possession of the cellular telephone rather than a Thermos) to punish him.[5]  Doc. 1 at 7.  Respondent counters that each sanction the DHO imposed against Ramirez is permitted under BOP policy, and any challenge to the severity of the sanctions should be rejected.  Doc. 7 at 8–9.[6]

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).  Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."

---

[5]     Ramirez is splitting hairs, it seems, by stating he admitted to possession of the Thermos but not the cellular telephone.  Even if Ramirez did not specifically admit to possession of the cellular telephone, he did admit to possession of the Thermos.  The cellular telephone and a charging cord were found inside the Thermos Ramirez admitted possessing.  Doc. 7-2 at 7, 8.

[6]     In his Response to the Motion to Dismiss, Ramirez avers his due process rights were violated during the administrative appeals process because he did not receive a response to his BP-10 until Respondent filed his motion for dismissal.  Doc. 10 at 4.  This is a different claim entirely than what Ramirez initially asserted, and the Court does not consider it.  However, even if the Court were to consider this newly-asserted claim, it would be unexhausted, as discussed in § II(D) of this Report.

Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. Appx' 752, 757 (11th Cir. 2006) (internal citation omitted).[7]

The DHO's decision to impose loss of 41 days' good conduct time, 54 days non-vested good conduct time, and visitation, commissary, and telephone privileges for 6 months as sanctions after finding Ramirez committed the Code 108 violation is based on "some evidence." Indeed, DHO Roger Perry based his findings on Lieutenant R. Staines's report detailing the discovery of a cellular telephone and charging cord hidden inside an orange Thermos during a search of Ramirez's cell, the chain of custody forms, and Ramirez's admission of guilt. Doc. 7-2 at 8. In addition, the sanctions imposed were to due to the seriousness of Ramirez's actions and in an attempt to deter Ramirez from future violations, and these sanctions were made in accordance with Program Statement 5270.09. Id. at 8–9.

---

[7] Ramirez does not contend his right to due process was violated as a result of the actual hearing. Even if he did, however, such a claim would be subject to denial. A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Eleventh Circuit has determined an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id. Ramirez received written notice of the charges against him well in advance of the hearing, was advised of his rights applicable during the hearing, attended the hearing, and received written notice of the DHO's findings. Doc. 7 at 9–10; Doc. 7-2 at 3–4, 7–9.

The BOP's Program Statement 5270.09 concerns the inmate disciplinary program. Doc. 7 at 7.  Under this statement, prohibited acts are categorized and assigned code numbers and severity levels.  In addition, the possible sanctions for any prohibited act are set forth in the Program Statement.  Program Statement 5270.09.[8]  A Code 108 charge is one of the "greatest severity," and the allowable sanctions for violations of charges of the greatest severity are sanctions "A through M" after a finding is made the inmate committed the charged act.  Id. at 9, 12–16 (§ 541.3(b)(1)).  The allowable sanctions for a finding of guilt on a Code 108 charge include forfeiture of up to 100% of non-vested good conduct time, disallowance of up to 41 days' good conduct time, and loss of privileges.  Id. at 11 (§§ 541.4(b)(1), (4)); Doc. 7 at 8.  DHO Perry found Ramirez guilty of the Code 108 charged offense, and "some evidence" supports this finding.  DHO Perry was allowed to impose the loss of 41 days' good conduct time, 54 days non-vested good conduct time, and visitation, commissary, and telephone privileges for 6 months after finding Ramirez guilty of the charged offense, in accordance with the BOP's Program Statement for inmate discipline.  Thus, the imposed sanctions "were proper under the circumstances."  See Duffy v. Atkinson, No. 09-23210-CIV, 2010 WL 3055190, at *4 (M.D. Ga. July 9, 2010) (recognizing a violation of a moderate category offense and finding imposed sanctions appropriate under the applicable policy), *report and recommendation adopted*, 2010 WL 3055223 (Aug. 3, 2010).  Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Ramirez's Petition.

**IV.    Whether the Severity of Sanctions Violated Ramirez's Right to Equal Protection**

Ramirez avers there is disparity between the sanctions imposed against him and against other inmates who committed the same prohibited act.  Doc. 1 at 6–7.

---

[8]     https://www.bop.gov/PublicInfo/execute/policysearch?todo=query, last accessed Apr. 30, 2019.

Respondent asserts that even a liberal reading of Ramirez's Petition fails to reveal any basis for an equal protection claim, as Ramirez does not show he is similarly situated to any inmates who received lesser sanctions or that this disparity is a result of a constitutionally-protected interest. Doc. 7 at 7.

Ramirez does not allege a plausible equal protection claim. In order to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates; and (2) that this discriminatory treatment is based upon a constitutionally-impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). In this case, Ramirez contends that he received a more severe punishment than other inmates who committed the same offense. However, Ramirez fails to allege he is similarly situated to those inmates, particularly given the number of inmate-specific factors the DHO considers when fashioning a punishment. Moreover, Ramirez fails to allege he was discriminated against based on a constitutionally-impermissible basis, such as race. While Ramirez attempts to make a showing of an equal protection claim in his Response to the Motion to Dismiss, he sets forth no more than conclusory allegations in this regard. Doc. 10 at 3–4.

For these reasons, the Court should **GRANT** this portion of Respondent's Motion and **DENY** this portion of Ramirez's Petition.

**V.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Ramirez leave to appeal *in forma pauperis*. Though Ramirez has, of course, not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Ramirez's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Ramirez *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Ramirez's Petition based on his failure to exhaust his administrative remedies. In the alternative, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Ramirez's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Ramirez leave to appeal *in forma pauperis*. I **DENY** Ramirez's Motion for Default Judgment.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any

contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Ramirez and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of April, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA